of the state of scientific knowledge." N.T., 5/18/95, at 6.

I believe it was erroneous to reject Dr. Woody's testimony when it was offered to rebut the testimony of Dr. Cohn. Dr. Cohn was not a psychiatrist but a forensic toxicologist. His expertise was in relating quantitative dosages of drugs and alcohol to their effects on the human body. Dr. Woody's testimony would have directly refuted Dr. Cohn's contention that a correlation exists between cocaine levels and toxic psychosis. Dr. Woody would also have testified that the psychotic disorder induced by cocaine would not manifest itself in any physical manner. This would have been a direct contradiction of Dr. Cohn's statement that appellant's lack of physical impairment was a basis for concluding that he did not suffer from toxic psychosis. Thus Dr. Woody, appellant's psychiatric expert, would have testified that the testimony of Dr. Cohn, the Commonwealth's expert, was arguably incorrect in terms of the state of scientific knowledge in the field.

It would have been proper surrebuttal to present the testimony of Dr. Woody in contradiction of Dr. Cohn's testimony. *See Commonwealth v. Ragan*, 538 Pa. 2, 21, 645 A.2d 811, 820 (1994); *Hoffman v. Berwind–White Coal Mining Co.*, 265 Pa. 476, 485, 109 A. 234, 238 (1920); *Remy v. Michael D's Carpet Outlets*, 391 Pa.Super. 436, 443–44, 571 A.2d 446, 450 (1990).

The core issue during the guilt phase of the trial was whether appellant had formed the specific intent to murder the victim. The proffered testimony of Dr. Woody had a direct bearing on that issue. The significance of the issue was manifested by a question sent out by the jury during its deliberations: "Did Dr. Cohn say a toxic psychosis could have been possible in Wayne Smith's case?" The question struck directly to the heart of the issue of appellant's level of culpability in the murder. In this trial there was no dispute that toxic psychosis would negate the ability to form a specific intent to kill; the only debate was whether or not appellant was suffering toxic psychosis at the time of the killing. The information which Dr. Woody should have been permitted to present in surrebuttal was crucial to appellant's

defense and integral to the concerns of the jury reflected in the question submitted during deliberations.

I therefore conclude that the trial court committed reversible error when it refused to permit Dr. Woody to testify in surrebuttal during the guilt phase of appellant's trial. I would reverse the judgment of sentence and remand for a new trial.

ZAPPALA, J., joins this dissenting opinion.

In the Matter of Joseph J. MARRA.

No. 172 Disciplinary Docket No. 3.

Supreme Court of Pennsylvania.

May 21, 1997.

*ORDER*

PER CURIAM:

AND NOW, this 21st day of May, 1997, Joseph J. Marra having been disbarred by consent from the practice of law in the State of New Jersey by Order of the Supreme Court of New Jersey dated December 30, 1996; the said Joseph J. Marra having been directed on March 27, 1997, to inform this Court of any claim he has that the imposition of the identical or comparable discipline in this Commonwealth would be unwarranted and the reasons therefor; and no response having been filed, it is

ORDERED that Joseph J. Marra is disbarred from the practice of law in this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.